Good morning, Your Honor. Good afternoon. Usually the morning. May it please the court, I will address three clear reversible errors, two concerns standing and one concerns the statute of limitations. First, the district court contradicted the Second Circuit's controlling decision in Petrobras by applying New York law to London securities trades. That decision holds that foreign trades do not occur in New York due to settlement by the Depository Trust Company, or DTC. The identical issue is pending before the court in a case we marked as related, which Judge Bianco also was on the panel with. Is that a question of local law, or is that a question of federal law? That is, are we bound by whatever they decide Ohio thinks, or are we not? Ohio is not at issue in this case. It's a matter of- Or is it a federal question? It's New York's center of gravity test as applied by the federal court. Petrobras arises in the Morrison context, but New York State has the same presumption against extraterritoriality that the federal courts do, and would likely apply the same. Petrobras isn't a choice of law case, though, right? It's right. It's a Morrison case on deciding when the presumption against extraterritoriality can be overcome. When is a trade domestic? And that principle of domesticity is the same in this case as it was in Petrobras. Let me just go back to the point about the other panel that I'm on. I just want to make sure we're all in agreement on what is potentially before that panel, because as you know, our rule is to wait for the prior panel's decision. My understanding, you can correct me if I'm wrong, is that assuming in that case we decide that German law should apply, that it's the exact same issue, right? There's no distinction whatsoever. I think there is- the issue is the same. I think there is a wrinkle because Ohio law is implicated in that case, but I believe the issue would be the same. All right. And then on the sole certificates issue, the standing issue- We have to wait. Right. Because the same issues you're raising here about whether or not a branch, how you factor in that it's a branch, whether it should matter or not, whether DTC's involvement, how much weight should be given to that, that's right before the other panel, right? Yes. And may I say a couple words about that? That Commerce Bank executed these London trades from a branch office is irrelevant to the place of contracting, which was London, under Logan of Askiah. But again, that may be, but we are bound by what a prior panel will decide on that. You may be bound if they decide first, and you could decide- We have to wait for them. Oh, you have to wait. Yeah, by our rules, we have to wait. I didn't know that. I'm sorry, Your Honor. So you would be bound, but you can always refresh the decision, obviously. We can argue, but- The place of contracting, importantly, is the most important test under New York's center of gravity test. And two errors the district court made were disregarding that these were London trades first as to seller because of its German headquarters. But Petrobras, Logan of Askiah, and absolute activists cited in our brief, all three from this court, hold that the ultimate residency or headquarters of a party are irrelevant to the place of contracting. But may I suggest that anything that is before the prior panel in this case, and there are three issues which I believe are also before the prior panel, that as to those, you're probably wasting your time arguing now. When they decide, we are very likely to ask you to submit briefs as to whether there is a difference. There are a couple of issues that are not before the other panel, the Minnesota MIT, and so perhaps you'll want to address those issues. Yes, we will indeed. And I believe also not before the other panel is the negating clause issue. The way I did a little chart to try to figure this out, and I believe there are at least three certificates that do not implicate, that weren't sold, and they don't involve the German certificate. So at a minimum, the negating clause issue is going to remain regardless of what the other panel does, correct? Correct. So why don't you address the negating clause issue then? Yes, I will do that. And I'd like to say a couple final points about the sold certificates first, if I may. Sure. The location of the buyers has also been wrongfully disregarded by the district court because it speculated that there may be some other ultimate purchaser other than the London buyers who bought. But if you look at the trade certificates, the only parties we faced, with the exception of one, were in London. And there is no support for the notion that there was any other ultimate purchaser. And the last thing I'll say about Petrobras, the absolute activist test for domesticity requires that either title passes in New York, which DTC itself says DTC does not pass title, or the parties become irrevocably bound in the U.S. And it's undisputed they did not. All right. Let me ask you about the negating clause because I want to make sure we have enough time to do this. Sure. So they raised that issue in a pre-motion letter, which you and your client were part of. In fact, in response to that, you noted in the letter that – jointly noted in the letter that it could be cured. They then put in their answer, standing in their answer. And then once they have proof that there's no authorization, they raise it in the summary judgment motion. So explain to me why they waived it under those circumstances. The reason they waived it is that it must be specifically preserved, not generally. The court's decision, a lack of standing is an affirmative defense, and a specific denial with supporting facts is required under Federal Rule 9A2. It says if the supporting facts are peculiarly within the party's knowledge, but the negating clause isn't peculiarly within their knowledge. It certainly is available to your client, right? That's certainly true, although – We've never – you can't cite any decision where we have said if someone puts standing in their answer, they've waived it unless they say we are asserting standing on these five grounds. We've never said that before. Agreed. We don't contend that, Your Honor. And the major point is that we had timely cure. The error that the district court made was by measuring our cure period from 2015 when the case was first filed. Intervening was the pandemic in 2020. That was when Wells made its first formal objection. Wells itself admits in its brief at 34 that it only advanced the argument at summary judgment. It advanced the argument in a pre-motion letter in 2016, and in response to that, you and the other defendants said, we can cure this. Right. So, Your Honor noticed in 2016 that they're going to raise this issue, and the pandemic wasn't until 2020. There was four years. Correct, but they didn't raise it. Under this court's decision in advanced magnetics, the pre-motion letter preserves but does not formally raise the objection. I don't understand the difference. Could you explain that? Yes. A formal objection, a general standing objection here, we don't know whether it's negating clause that's being pressed or sold certificates unless it's specified. When it was under advanced magnetics, I invite the panel to look at this court's decision in advanced magnetics. It's the time it's first formally raised in the case, not in a pre-motion letter, and it's undisputed that that was not until the summary judgment motion. And if I could just briefly on summary, on statute of limitations as well, two points. First, in AMBAC, this is the leading decision in the Southern District on accrual of claims. And here, the causes of action did not accrue until 2012 and 2013. Doesn't the breach of contract action always accrue when the contract is first breached? Correct. And no breaches of the trustee's loan repurchase enforcement duties occurred until 2012 and 2013. They had six years from the closing of the trust to enforce those breaches. And when they allowed them to lapse is the first time that the cause accrued, and that is after the 2011 period that makes these cases timely. And likewise, the court also violated fundamental principles of summary judgment in concluding that the Commerce Bank plaintiff had information sufficient to commence its claims with a prospect of success in Germany, because Germany is a civil law state without notice pleading. Four district court judges now have disagreed with that argument, right? And it's high time that this court intervened to change that, because if you look at the things that were cited by those district courts, not one of them ties Wells' misconduct to these trusts. They don't even concern any Wells' misconduct. And they would have no chance to give any prospect for success for a German plaintiff in a German trial without the benefit of discovery. They are barely enough for a notice pleading in the U.S., but Germany is a civil law jurisdiction without notice pleading. All right. Thank you, Mr. Woolman. Thank you very much. I think you reserved how much time? One minute. One minute? Okay, thank you. All right, Mr. Roth, you're up. May it please the court, Yakov Roth on behalf of Wells Fargo. I guess I'll start with the negating clauses, because as the court noted, that's one issue that isn't already presented for another panel. You agree that the German statute of limitations issue is squarely before the first panel, right? The issue is before the first panel. I don't know if the records are identical. Commerce Bank is a party in that one. Wells Fargo is not. So I know that, broadly speaking, the legal issue is the same. Basically, the legal issue of a statute of limitations is the same. Correct. And the choice of law issue, albeit under the Ohio center of gravity test rather than New York center of gravity test. Right. So for the sole certificates, same thing. It's the same thing. Again, there may be factual record differences in, you know, exactly which trades and who the parties were and so on, but the general legal issue is certainly presented in that. Can you address the negating clause? Yeah, I'll speak to the negating clause. So I don't think Commerce Bank disputes that by the time they obtained the authorizations from the legal owner to pursue these claims, that the statute of limitations had passed under any measure of the statute of limitations. They invoke rule 17 to try to get around that, to say they can relate back to when they filed suit under rule 17. But the district court specifically found and held that they had not acted within a reasonable time, and that determination is only subject to review for abuse of discretion in this court, and I don't think Commerce Bank has really even tried to show an abuse of discretion. Well, they said that, as you heard, it was in their papers that the clock doesn't start ticking until it's formally raised, so the district court erred in calculating back to 2016. Well, what the district court said and correctly said was Wells Fargo flagged this issue specifically in early 2016 at A261. It's a three-page letter. Okay, this is not something that got buried somewhere. Three-page letter identifying the grounds for dismissal, and Commerce Bank responded to that letter that same month, that is at A265, acknowledging the issue and saying, well, if it really is an issue, we can cure it. So they knew this was an issue as of April 2016. They waited four years to obtain those authorizations, and the district court, I think, permissibly concluded that that was not a reasonable delay, and I don't think there's any grounds for this court to hold that that was an abuse of discretion. Well, if it's an issue of when the time begins, then it's not a matter of discretion. If it's a matter of discretion, then, of course, the district court can look to how it was said and so on. So you're saying it's a matter of discretion. That's correct, yes. They cite the advanced magnetics case saying that it has to be a formal objection, and you just disagree with that. There is language in there that talks about in that case at least there was a quote-unquote formal objection. Well, there was formalóI mean, the standingóas Your Honor noted, standing was expressly identified in the answer as an affirmative defense. They say it was not specific enough, but there was no uncertainty about what it meant because we had already told them in the pre-motion letter, and they had responded to the pre-motion letter. So I don't think they can claim they were confused or we somehow tricked them about this. We put it squarely on the record. We then solidified it in the answer, and they sat on it for years, and I haven't heard any reasonó Your position is that it was formally in the answer and that the additional notice was provided in the pre-motion. Exactly. That's correct, Your Honor. That's our position. So that, I think, takes care of theó Oh, one more point I would make quickly on the negating clause because there is this sort of flavor in Commerce Bank's brief that, you know, this is just this technical thing. Why would we ever bother with it? I think it's important to note there actually is an important function to this type of clause, and it's because Wells Fargo, as trustee, does not have access to a list of who owns beneficial interests in the certificates. All we know is that there's a certificate registered in the name of Seed & Co. So if we don't have anything tying the plaintiff to that legal owner through a written authorization, we have no way of knowing they're actually a beneficial owner withstanding. And so that's the reason this type of clause exists. It's the reason why it's important at the outset of the case to obtain that authorization Because if it had turned out in 2020 that they couldn't get the authorization from Seed, we would have spent four or five years litigating something for no purpose because they had never had authority to sue in the first place. And is that whyówhy didn't you raise it in a motion to dismiss? Why did you wait for summary judgment? Is that the reason? Well, theyówe flagged it, but they could have cured it. They were able to, and they said they would. So I think we assumed they would, and they didn't. And that only came out when we ultimately saw summary judgment. And I thought you raised it againstódid you raise it against any of the other defendants, and you didn't raise it against them, or am Ió I think it may have been raised in the consolidated case before theyóbefore their action was consolidated, but I don't think the district court reached it at that stage. All right. Okay. Although the other issues are pending, I'll just say a few words about them because my friend did as well. With respect to the sold certificates and the choice of law, again, on that issue too, four district judges have looked at this, and all four district judges have concluded that New York law is theóNew York is the center of gravity for these types of transactions. Well, there is very little. I mean, do weóif that is an issue for New York, do we have enough New York law to know? I think the question is do we have enough New York connections toó No, no. Do we have enough New York cases to know what New York really wants with respect to this? Well, we haveó Or is this something that if it came down to it, we should certify so that at least once and for all this would be clear? Now, again, I'm not saying we should do any of this given the prior case, but if it comes down to being a New York issue, do we really have enough New York law on what New York wants to do on this when New York is so peculiar about this? Because of the merits of the thing, it looks as though New York is different from everybody else. Well, Your Honor, I think we have to separate the substantive question of New York law, which is, as they say, a minority view, from the choice of law test. And the choice of law test itself is fairly well established. Obviously, it's a number of factors that are going to apply differently on different sets of facts, and so we have to do our best to apply those to these facts. You say that four district courts, four New York courtsóI've looked at New York cases in that I read some courts saying yes and some courts saying no when it comes to whether New York would apply New York law here. I may be wrong. I don't think any courts have said that New York law would not apply on this type of constellation of facts, and soó There are some New York cases that talk about the financial infrastructure of New York being implicated, right? That's right, that there's a public policyóthis goes back decades in your court of appealsó that they have a public policy of New York retaining its role as an international financial center and clearinghouse, which speaks to applying New York law toó But there are times when that is so. If we looked at Delaware, for instance, they always find that Delaware law must apply. New York ain't quite that way. Soó Well, Your Honor, why don't I put it this way? If we take a step back and look at what's going on here, here's how I would characterize it. We have trusts that are created by New York law and are governed by New York law. They issue certificates that are physically held in New York by a New York custodian. The beneficial interests in those certificates are recorded in New York on DTC's accounts. When those interests are bought and sold, they are settled in New York through DTC and in U.S. dollars. And in this context, for the question that we're dealing with here, the ultimate dispute is over who has standing to pursue New York law claims in court in New York against the trustee of a New York trust. And I look at that and I put that next to the seminal New York Court of Appeals decisions on choice of law, and I think the four district judges who looked at this got it right. There is enough here to warrant applying New York law to these transactions. Now, my friend mentioned Petrobras, so I just would say a word about Petrobras. Two things to note about that case. Number one, it was a class certification context, so the court was looking at whether there was commonality across all of the securities trades. And in that context, it makes perfect sense to say one factor alone is not going to provide the commonality you need for class certification, and we've never taken the position that one factor alone is controlling. You've got to look at the entire constellation of facts, and that was what mattered, I think, in Petrobras. What about their argument that the ultimate buyer's location is irrelevant? What's your response to that? Even if we don't look at the ultimate buyers, we're looking at the actual buyers, the brokers, the people they were interacting with. If you look at the list, they're all over the world. We have financial institutions centered in New York, in Paris, in Switzerland, in Japan. Of course they have London offices, and they also have New York offices. So I don't think that really moves the needle for them. This is a German bank that was managing sales through London employees and dealing with employees of financial institutions all around the world, including New York. I could just point to page A4980, which shows a Morgan Stanley employee in New York submitting bids and winning bids. And if you look at ECF 558-49-53-64, that's three examples of Barclays, New York office, being recorded on trading tickets as buying these. And again, their appeal takes an all-or-nothing approach to this issue. So the fact that we have those transactions involving New York buyers, I think, is alone sufficient to say their position can't be right, that New York law doesn't govern at all in this area. Thank you, Mr. Roth. Thank you, Your Honor. Mr. Wilmoth, you have one minute. New York public policy is against extraterritoriality. It would upset expectations worldwide if all trades worldwide had New York law applied because of DTC. It would also open a floodgate for securities litigation in New York courts. It is incorrect to say that the certificates were held at DTC as the district court ruled they are not. I would direct the court to the- You have just addressed something in terms of New York policy. Do we have New York cases that are clear enough on that issue? There are clear New York cases against extraterritoriality, even though I can't say it. And I would be happy to submit them by letter if they're not covered in our brief. I don't recall- We're still waiting for another case, so you'll have plenty of time. But that's not a choice of law. There are no New York cases under a choice of law analysis that have said that the implication of the DTTC, or the financial markets, is insufficient. In fact, they've said the opposite in general terms, that when the New York financial infrastructure is implicated, they've said that in Dos Suis, they've said it in Petrolias de Venezuela. There's a bunch of cases that seem to suggest that the New York courts believe that they should be able to apply their law when their financial infrastructure is implicated. But their policy would be against the export of GOL 13-107 to every foreign trade. It would mean every hedge fund in the world could just buy an already depreciated certificate. I want you to address, because they do say that certificates were also held here, and you're saying no. Why do you say that certificates weren't held here? I would direct the court to the governing agreements A1959. The only certificates ever held, there's only one, is held by DTC in New York for settlement convenience. Our clients, under the definition of certificate owner, own only beneficial interests that are held electronically in London and never held at DTC. Finally, there is no resident in London that traded these securities. The only buyers, I mean, no resident in New York, I'm sorry. The only buyers were in London, with one exception, who was in Texas and does not have 13-107. One point on the negating clause, I'd like to direct the court to Judge Stanton's recent decision in the NCOA case that we submitted. It's identical facts to ours, and he held at summary judgment that when the authorizations were obtained, the negating clause argument was moot, and the clause is to be liberally applied, absent bad faith or prejudice, neither of which are argued here. All right, thank you both for a reserved decision, have a good day. Thank you.